**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BLACKHAWK CONSULTING, LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 1:13-cv-13 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(A)**

**I.  INTRODUCTION**

The Plaintiff, Blackhawk Consulting, LLC, ("Blackhawk") has brought a complaint against the Defendant, Federal National Mortgage Association ("Fannie Mae") for defamation, tortious interference with existing contracts, tortious interference with prospective business opportunities, unjust enrichment, promissory estoppel, quantam meruit, statutory business conspiracy, and common law civil conspiracy. Blackhawk has moved to transfer this case to the Northern District of Texas, or to the Eastern District of Virginia in the alternative, pursuant to 28 U.S.C. §1404(a). Its motion will be granted.

**II.  FACTUAL ALLEGATIONS**

Blackhawk is a Virginia limited liability company with its principal office in Herndon, Virginia. Compl. ¶ 3. Fannie Mae is a corporate enterprise whose principal place of business is in the District of Columbia. Compl. ¶ 2, 7. As of 2008, Fannie Mae has been placed under the conservatorship of the Federal Housing Finance Agency ("FHFA"). Compl. ¶ 8.

Fannie Mae primarily provides services in the residential real estate market, including in the U.S. secondary mortgage market. Compl. ¶ 5, 17. As a part of this work, Fannie Mae acquires homes through foreclosure sales and deeds-in-lieu of foreclose sales. Compl. ¶ 18. When Fannie Mae takes title, the properties acquire real estate owned (REO) status. Compl. ¶ 18. Fannie Mae contracts with real estate brokers throughout the United States to sell these REO homes. Compl. ¶ 19. Pursuant to these contracts, knows as Master Listing Agreements (MLAs), REO brokers are able to subcontract with independent companies to assist in sales of REO homes. Compl. ¶¶ 26-33; MLA Section 17. Blackhawk was one such subcontractor, independently consulting with Fannie Mae's real estate brokers to provide REO sales field training, quality control review, and back office and administrative support. Compl. ¶ 86. Fannie Mae has never entered into a contractual relationship directly with Blackhawk. Liszka Decl. Ex. 1. In November of 2012, Fannie Mae terminated the contracts of all known REO brokers consulting with Blackhawk. Compl. ¶¶ 99, 102. As a result, both the terminated brokers and Blackhawk were not compensated for services rendered. Compl. ¶11. Blackhawk filed suit in this court for defamation, tortious interference with existing contracts, tortious interference with prospective business opportunities, unjust enrichment, promissory estoppel, quantam meruit, statutory business conspiracy, and common law civil conspiracy. Pursuant to 28 U.S.C. §1404(a), Fannie Mae has filed a Motion to Transfer Venue to the Northern District of Texas, or in the alternative to the Eastern District of Virginia.

### III.  ANALYSIS

#### A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought….'' 28 U.S.C. §1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citations omitted). The burden is on the moving party to establish that transfer under §1404(a) is proper. *Montgomery v. STG Int'l, Inc.*, 532 F.Supp.2d. 29, 32 (D.D.C. 2008).

Accordingly, the defendant must make two showings to justify transfer. First, the defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited v. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996). In evaluating a motion to transfer, a court may weigh several private- and public-interest factors. *Sheffer v. Novartis Pharm. Corp.*, 873 F.Supp. 2d 371, 375 (D.D.C. 2012) (citing *Trout Unlimited*, 944 F. Supp. at 16). The private-interest considerations include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof. *Sheffer*, 873 F. Supp. 2d at 375; *Montgomery v. STG Int'l. Inc.*, 532 F.Supp.2d 29, 32 (D.D.C. 2008). "Public-interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." *Onyeneho v. Allstate Ins. Co.*, 466 F.Supp.2d 1, 3 (D.D.C. 2006); *Airport Working Group of Orange County., Inc. v. U.S. Dep't of Def., et.al.*, 226 F.Supp.2d 227, 229 (D.D.C. 2002) (internal citations omitted). "If the balance of private and public interests favor a transfer of venue, then a

court may order a transfer." *Sheffer*, 873 F.Supp.2d at 375 (citing *Montgomery*, 532 F.Supp.2d at 32).

**B. The Court Grants the Motion to Transfer Venue to the Northern District of Texas**

1. The Threshold Inquiry

Fannie Mae contends that venue is more appropriate in the Northern District of Texas because the acts giving rise to the claims at issue, a majority of the witnesses named in the complaint, and a majority of the evidence at issue is located in Dallas, Texas.[1] Blackhawk argues that venue is appropriate in the District of Columbia since Fannie Mae is headquartered there, Blackhawk itself has been affected by the tortious conduct in the D.C. metropolitan area, and many non-party witnesses are located within the court's subpoena power.

The threshold inquiry in a §1404(a) analysis is whether the action could have originally been brought in the proposed transferee district. 28 U.S.C. §1404(a). Blackhawk does not dispute that the Northern District of Texas would have jurisdiction over the case and the parties, thus satisfying the threshold inquiry. Further, as required under 28 U.S.C. §1391(b)(2), a "substantial part of the events or omission giving rise to the claim occurred" in Dallas. The majority of Fannie Mae's REO activities are based out of their Dallas office. Box Decl. ¶ 4. The contracts in dispute, the Master Listing Agreements (MLAs) between Fannie Mae and the REO brokers, originate and are administered from Fannie Mae's Dallas office. Box Decl. ¶ 6. A majority of the individuals involved in the conduct alleged in the suit, including all of the named Fannie Mae

---

[1] Fannie Mae makes two other jurisdictional arguments. First, they argue that Blackhawk is barred from suing in the District of Columbia under D.C. Code § 29-105.02, since Blackhawk was not registered to do business in the District prior to bringing suit against Fannie Mae in this court. Second, Fannie Mae argues that the forum selection clause in the MLA binds Blackhawk even as a non-signatory, and thus mandates transfer of the case to the Northern District of Texas. Because the court grants Fannie Mae's motion for a discretionary transfer of venue pursuant to §1404(a), it does not reach these issues.

employees, are in Dallas. Box Decl. ¶¶ 11-12. The relevant emails and statements identified in Blackhawk's complaint originated from Dallas. Box Decl. ¶¶ 6-7. And both Blackhawk and Fannie Mae are registered to conduct business in Dallas. Box Decl. ¶¶ 2, 9; Compl. ¶5. Because the defendant has met this test, the court next considers whether considerations of convenience and the interest of justice weigh in favor of transfer.

2. Private Interest Factors

Although "plaintiff's choice of forum is normally to be preferred," *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc), that deference is mitigated when, as here, the action is not brought in the plaintiff's home forum. *Trout Unlimited*, 944 F.Supp. at 17; *Thayer/Patricof Education Funding v. Pryor Resources Inc.*, 196 F.Supp.2d 21, 31 (D.D.C. 2002) (explaining that plaintiff's choice of forum is "ordinarily afforded great deference, except where plaintiff is a foreigner in that forum"). Blackhawk does not even maintain a permanent office in Washington D.C., and so would hardly expect that its choice of forum would be given significant weight. Pl's Opp'n to Def's Mot. to Transfer Venue, 9, n.5  [hereinafter Pl's Opp'n] ("Blackhawk had the right to use a broker's office in the District of Columbia to conduct meetings on an as-needed basis.").

In addition, deference to the plaintiff's chosen forum is further mitigated here as the forum has little "factual nexus" to the case, and the "subject matter of the lawsuit is connected" to the proposed transferee forum. *Trout Unlimited*, 944 F.Supp. at 17; *Lagor v. Eli Lilly & Co.*, No. 06-1967(JDB), 2007 WL 1748888 , at *6-7 (D.D.C. June 18, 2007). Blackhawk contends that Fannie Mae is not inconvenienced by a suit in the District given their significant contacts to the forum. Pl's Opp'n 2-5. It is true that Fannie Mae is headquartered in D.C. and maintains over 2,000,000 square footage of office space here. *Id.* at 2-3. And their Business Transformation

group of the Credit Loss Management department, responsible for REO training and REO property strategic planning, is situated in the District of Columbia. *Id.* at 3.

Still, Fannie Mae's mere presence in the plaintiff's chosen forum will be insufficient if, as here, the majority of the acts giving rise to the claims occurred outside of the District. *See Sheldon v. Nat'l R.R. Passenger Corp.*, 355 F. Supp. 2d 174, 178 (D.D.C. 2004) (holding that a defendant's presence in the District will have "no immediate relevance" to a choice of venue if the majority of the relevant acts occurred outside of the District.); *Fenwick v. Nat'l R. Passenger Corp.*, No. 91-2617, 1991 U.S. Dist. LEXIS 16544, at *3-4 (D.D.C. Nov. 20, 1991). Most of Fannie Mae's REO activities, including the management of REO properties, are based out of Fannie Mae's Dallas office. Box. Decl. ¶¶ 2-4. It is also undisputed that a majority of the communications identified in the complaint originated in Dallas, Texas. Box Decl. ¶¶ 2-7, 9, 13-15. For instance, the October 2012 email sent by Jonathan Liszka, Vice President of REO sales, to REO brokers (Compl. ¶ 142), and the November 9, 2012 letter sent by Mr. Liszka to Blackhawk owner Jonathan Spinetto (Compl. ¶ 65) originated in Dallas, where Mr. Liszka works. Liszka Decl. ¶¶ 4-5. Similar communications by Stephen Powell (Compl. ¶¶ 120-122), Calvin Short (Compl. ¶¶ 112-13) and Christopher Kocks (Compl. ¶¶ 129, 148) also originated in Dallas. (Powell Decl. ¶ 4; Short Decl. ¶ 4; Kocks Decl. ¶¶ 4-5).

Blackhawk argues next that the reputational damage suffered from Fannie Mae's tortious conduct occurred wholly outside of Texas. Pl's Opp'n. 7-9. However, Blackhawk is only able to isolate five instances where an email or letter was sent to D.C. Pl's Opp'n 8. And even then, the communications were only nominally related to the venue. These communications are only connected to D.C. because the CEO of Fannie Mae was copied on the e-mails and letters, and also happens to work out of the D.C. office. Pl's Opp'n 8; Liszka Decl. Ex. 1. The remaining

communications were disseminated to many areas of the country, of which D.C. was just one. Pl's Opp'n 8. As a result, the District of Columbia has little interest in the matter since the tortious conduct did not originate here and the effects of the tortious conduct were not felt here.

In addition to Dallas's local interest in punishing tortious conduct occurring in its state, a majority of the witnesses also reside in Dallas, further warranting a transfer of venue. *See Flagship Banks, Inc. v. Inversiones Credival, C.A.*, No. 82-2540, 1982 U.S. Dist LEXIS 16220, at *6-7, *10 (D.D.C. Oct, 1, 1982) (justifying a transfer of venue because "key witnesses" resided in locations and had more contacts outside of the District of Columbia). The relevant witnesses in this case, including almost all of the Fannie Mae employees named in Blackhawk's complaint, reside in Dallas. Compl. ¶ 65; Liszka Decl. ¶¶ 4-5; Compl. ¶¶ 120-122; Powell Decl. ¶ 4; Compl. ¶¶ 112-13; Short Decl. ¶ 4; Compl. ¶¶ 129, 148; Kocks Decl. ¶¶ 4-5. Blackhawk additionally identifies senior officials in Fannie Mae's D.C. office as potential party witnesses. The court accords less weight to these individuals since neither the complaint nor Blackhawk's Opposition clearly identifies the purpose and relevance of each witness's testimony. *See Clark v. Sprint Spectrum L.P.,* No. C 10-03635 SI, 2010 U.S. Dist. LEXIS 136510, at *13-14 (N.D. Cal. Dec. 15, 2010) (granting a motion to transfer in part because plaintiff primarily offered "speculative and general predictions" regarding witnesses and their anticipated testimony). Even when Blackhawk does identify the potential testimony of these named officials, such as Fannie Mae investigators Leslie Arlington and Alison Roach, it concedes that the named officials are only *indirectly* involved in investigating the issues raised by Blackhawk. Pl's Opp'n 12, n.11 ("Ms. Arrington and Ms. Roach personally participated in an investigation relating *indirectly* to Blackhawk from their Washington D.C. offices.") (emphasis added).

Blackhawk further notes that many of its employees who have been terminated or have quit due to the events at issue still reside in the D.C. metropolitan area and would provide testimony regarding Blackhawk's obligations to REO brokers regarding damages. Spinetto Decl. ¶¶ 3, 11, 12, 18-21, 27-29, 32-33. Although such testimony will be relevant to the case, these witnesses are not as central to the issue of liability as are those specifically identified in the Complaint. And even though almost half of the terminated employees live in the D.C. area, Spinetto Decl. ¶¶ 29, 32, their testimony will likely be duplicative.

Finally, a related pending request for declaratory judgment in the Northern District of Texas further justifies a transfer of venue in the interest of judicial economy. *Federal National Mortgage Association v. Champion Homes Realty, LCC and Redline Realty, LLC*, No. 3:13-cv-00893-G was filed approximately one month after Blackhawk initiated this suit and asks for a declaration that Fannie Mae lawfully and properly terminated the MLAs of the two defendant brokers named in the suit.[2] These defendant brokers are owned at least in part by Spinetto, Blackhawk's owner. Def.'s Mot. To Transfer Venue at 12; Compl. ¶ 79. Blackhawk argues that this Circuit's first-to-file rule applies here and that preference should thus be given to the originally filed Complaint in this court. *See WMATA v. Ragones*, 617 F.2d 828, 830 (D.C. Cir. 1980) (applying the first-to-file rule and noting the Circuit's long-standing application of the rule); *Holland v. ACL Transp. Servs.*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011) (noting that the first-to-file rule "militates against transfer" by the court with the first case on file). While it is true that the first-to-file rule is well-established in the Circuit, this court has repeatedly held that the rule

---

[2] Blackhawk argues that Fannie Mae lacks standing to bring suit in Texas because, pursuant to 12 U.S.C. §4617(b)(A)(i), the conservator of Fannie Mae, FHFA, has the exclusive right to sue. Pl's Opp'n at 26. The court is satisfied that this will not bar suit in the Northern District of Texas since FHFA is aware of the suit and has approved and authorized Fannie Mae's filing and prosecution of the claims in that action. Pollard Decl. ¶ 8.

should not be mechanically applied, but rather that due weight should be given to equitable considerations. *See Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975) (noting that the first-to-file rule "requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice.").

Regardless of whether the first-to-file rule even applies in this instance, Fannie Mae is correct in asserting that it had no choice but to bring its suit in Dallas, Texas, pursuant to the forum selection clause in section 24.H of the MLAs. Blackhawk alleges that Fannie Mae filed suit in Dallas as an end-run around Plaintiff's choice of forum. The court must be rigorous in determining whether one party "has launched a 'preemptive strike' against the other. *See Stone & Webster, Inc. v. Georgia Power Co.*, 2013 WL 4616430 at *3 (D.D.C. Aug. 30, 2013). However, no such factors are present here. The two suits were filed closely in time and the declaratory judgment was not filed after the initial suit had already progressed significantly. *Id.* Because Fannie Mae has properly brought suit in the Northern District of Texas, pursuant to its forum selection clause, and because substantially similar issues are present in both actions, a transfer of venue would promote judicial economy.

## IV.  CONCLUSION

For the foregoing reasons, the defendant's motion to transfer venue to the Northern District of Texas will be granted.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 30, 2013                                          RUDOLPH CONTRERAS
                                                                                          United States District Judge

9