UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:13-CV-0893-G |
| CHAMPION HOMES REALTY, LLC, ET AL., | ) ) ) | (Consolidated for Pretrial   Purposes Only) |
| Defendants. | ) | |
| BLACKHAWK CONSULTING, LLC, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:13-CV-4113-G |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | (Consolidated for Pretrial   Purposes Only) |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are (1) the motion of the Federal National Mortgage

Association ("Fannie Mae") to dismiss the claims of Blackhawk Consulting, LLC,

("Blackhawk") and Jonathan Spinetto ("Spinetto") or in the alternative to require

Blackhawk and Spinetto to file a more definite statement of their claims (docket

entry 37, 3:13-CV-4113-G) and (2) the motion of the defendants, Champion Homes

Realty, LLC, ("Champion") and Redline Realty, LLC, ("Redline") to dismiss Fannie

Mae's complaint for declaratory relief (docket entry 12, 3:13-CV-0893-G).  For the

reasons set forth below, Fannie Mae's motion is denied, while the motion of

Champion and Redline to dismiss is granted.

## I. BACKGROUND

### A. Factual Background

Blackhawk is a consulting firm which provides services related to the

residential real estate market.  First Amended Complaint ("Complaint") ¶ 5 (docket

entry 32, 3:13-CV-4113-G).  Jonathan Spinetto ("Spinetto"), a real estate agent, is

the sole owner of Blackhawk.  *Id*. ¶ 7.  Fannie Mae, a government-sponsored

enterprise chartered by Congress, purchases homes through foreclosure sales and

enters contracts with brokers to resell the homes.  *Id*. ¶¶ 6, 18-19; Defendant Fannie

Mae's Motion to Dismiss Plaintiff Blackhawk's and Spinetto's First Amended

Complaint, or, Alternatively, for More Definite Statement, and Brief in Support

("Fannie Mae Motion to Dismiss") at 1 (docket entry 37, 3:13-CV-4113-G).  The

foreclosed homes that Fannie Mae purchases enter Fannie Mae's real estate owned

("REO") inventory.  Complaint ¶ 18.  To sell the REO listings, Fannie Mae retains

brokers ("REO Brokers") through a contract called the Master Listing Agreement
("MLA").  *Id*. ¶¶ 21, 24-25.  The MLA provides the REO Brokers with guidelines,
including prohibitions and authorized actions.  *Id*. ¶¶ 26-31.  The MLA provides that
REO Brokers will be compensated by Fannie Mae for all services provided when the
listed property is sold.  *Id*. ¶ 51.  Additionally, Fannie Mae publishes a REO Sales
Guide designed to provide the REO Brokers with more information about the REO
sales process than contained in the MLA.  *Id*. ¶ 36.

On June 7, 2011, Spinetto formed Blackhawk after meeting with David Box, a
vice president and director of REO sales for Fannie Mae, at which the two discussed
the concept of third-party support for REO Brokers.  *Id*. ¶ 82.  Blackhawk was created
to provide REO Brokers with consulting services such as helping with broker price
options, training sales staff, lending money for improvements to be repaid upon
receipt of commission, providing office and administrative support, and performing
document review.  *Id*. ¶¶ 85-86.  During 2012, Blackhawk utilized the services of five
former Fannie Mae employees to add expertise to the consulting firm.  *Id*. ¶ 87.
Although Fannie Mae expressed displeasure at this practice during discussions with
Spinetto, Fannie Mae did not question the qualifications of these former Fannie Mae
employees.  *Id*. ¶ 88.  During 2011 and 2012, REO Brokers who hired Blackhawk
generally received favorable performance reviews from Fannie Mae and frequently
increased their inventory.  *Id*. ¶¶ 90-91.  Each of Blackhawk's contracts with its REO

- 3 -

brokers included a minimum five-year term and required the REO brokers to use Blackhawk's services with respect to each Fannie Mae property. *Id*. ¶ 95. Blackhawk and Spinetto contend that these contracts were not terminable at will. *Id*. ¶ 96.

In June of 2012, Blackhawk and Spinetto aver that Fannie Mae began a series of "tortious, wrongful, defamatory, and disparaging" actions against them. *Id*. ¶ 105. Specifically, Blackhawk and Spinetto assert that Fannie Mae employees Calvin Short ("Short"), Stephen Powell ("Powell"), and Chris Kocks ("Kocks") "repeatedly made negative comments" about Spinetto, Blackhawk, and two brokerage companies partly owned by Spinetto to persons within and outside of Fannie Mae. *Id*.; see also *id*. ¶¶ 106-139. For example, Blackhawk and Spinetto contend that Short, a repair specialist at Fannie Mae, began stating and implying that they were inflating repair bids and improperly favoring particular contractors in connection with REO listings. *Id*. ¶¶ 106, 113. Fannie Mae did not discover any such improper conduct by Blackhawk or Spinetto. *Id*. ¶ 114. Powell, a fraud investigator at Fannie Mae, began a mortgage fraud investigation of Blackhawk and communicated his undertaking of the investigation to other Fannie Mae employees and REO Brokers. *Id*. ¶¶ 121-123. Blackhawk and Spinetto claim that there existed no *bona fide* basis for conducting the mortgage fraud investigation of Blackhawk. *Id*. ¶ 123. Kocks, a director at Fannie Mae, stated to Fannie Mae employees that he intended to take Spinetto down because Spinetto's REO activities "were getting too big." *Id*. ¶ 125.

Blackhawk contacted Fannie Mae and reported that negative rumors and false statements about Blackhawk were emanating from Fannie Mae, and that Blackhawk's reputation was suffering as a result. *Id*. ¶¶ 131-32. In October of 2012, Fannie Mae suspended numerous REO Brokers that had contracted for Blackhawk's services. *Id*. ¶ 151. Blackhawk wrote to Fannie Mae and stated that its reputation was being damaged and asked Fannie Mae to provide Blackhawk and the REO Brokers with an explanation. *Id*. ¶ 143. Fannie Mae then requested the REO Brokers to submit copies of their contracts with Blackhawk. *Id*. ¶ 144. Shortly thereafter, Fannie Mae terminated all REO Brokers known to have contracted with Blackhawk. *Id*. ¶ 145. While Fannie Mae told the REO Brokers they were fired without cause, Fannie Mae purportedly told members of the public that the REO Brokers were fired for improper conduct involving Blackhawk. *Id*. ¶ 150.

Spinetto partly owns REO brokers Champion and Redline. Plaintiff's Original Complaint for Declaratory Relief ("Fannie Mae Complaint") ¶ 9 (docket entry 1, 3:13-CV-0893-G). Champion and Redline each executed an MLA with an effective date of May 1, 2011, and May 20, 2011, respectively. *Id*.; *see also* Fannie Mae Master Listing Agreement Instructions ("MLA Instructions"), *attached to* Fannie Mae Complaint as Exhibits 1a, 1b. Fannie Mae asserts that MLA Section 7(A) permits Fannie Mae to terminate the MLA "without cause." Fannie Mae Complaint ¶ 11; *see also* MLA Instructions § 7(A) ("Fannie Mae or Broker may terminate the Agreement

at any time with or without Cause upon written notice to the other party. . . .").

Fannie Mae notified Champion and Redline via letters that effective November 29,

2012, Fannie Mae would terminate its MLAs with Champion and Redline under

MLA Section 7.  Fannie Mae Complaint ¶ 12; *see also* Fannie Mae Letters ("Letters",

*attached to* Fannie Mae Complaint as Exhibit 2).  The letters were virtually identical

and read in pertinent part as follows.

> For purposes of Section 7D(4) of the MLA, this shall be
> considered a termination "without cause."  By issuing this
> termination "without cause," Fannie Mae is not admitting
> that circumstances that would justify termination "with
> cause" do not exist.

Letters.

## B.  Procedural Background

On January 7, 2013, Blackhawk filed this suit in the United States District

Court for the District of Columbia ("the *Blackhawk* case").  *See generally* Complaint.

On February 26, 2013, Fannie Mae filed suit in this court against Champion Homes

Realty, LLC, ("Champion") and Redline Realty, LLC, ("Redline") ("the

*Champion/Redline* case").  In the *Champion/Redline* case, Fannie Mae seeks a declaratory

judgment that Fannie Mae possessed a legal right to terminate its MLAs with REO

brokers Champion and Redline.  *See* Complaint (docket entry 1, 3:13-CV-0893-G).

In its complaint, Fannie Mae contends the following.

> In light of the [*Blackhawk* case], a dispute exists concerning
> the respective rights and obligations of the parties under

- 6 -

> the MLAs that can be resolved by this Court's entry of
> declaratory judgment.  Specifically, an actual controversy
> exists as to whether Fannie Mae lawfully and properly
> terminated the MLAs of Champion and Redline without
> cause in accordance with the terms of those contracts. . . .
> Fannie Mae therefore requests that the Court enter a
> declaratory judgment declaring that Fannie Mae followed
> the proper procedures and possessed a valid, legal right to
> terminate its broker contracts with Champion and Redline
> "without cause" in accordance with the express terms of
> the MLAs.

*Id*. at 4-5.

On February 27, 2013, Fannie Mae moved to transfer the *Blackhawk* case

pending against it in the United States District Court for the District of Columbia to

this district.  *See* Defendant's Motion to Transfer Case Venue Pursuant to 28 U.S.C.

§ 1404(a) (docket entry 7, 3:13-CV-4113-G).  On May 30, 2013, this court

administratively closed the *Champion/Redline* case pending a decision by the United

States District Court for the District of Columbia.  *See* Order (docket entry 24, 3:13-

CV-0893-G).  On September 30, 2013, the United States District Court for the

District of Columbia granted Fannie Mae's motion to transfer.  See *Blackhawk*

*Consulting, LLC v. Federal National Mortgage Association*, 975 F.Supp.2d 57 (D.D.C.

2013).  In light of that ruling, on October 25, 2013, this court reopened the

*Champion/Redline* case.  *See* Order (docket entry 28, 3:13-CV-0893-G).  On

November 8, 2013, Blackhawk amended its complaint to add Spinetto as a plaintiff

and to assert seven causes of action, including defamation, business disparagement,

- 7 -

tortious interference with existing contract, tortious interference with prospective

business opportunities, unjust enrichment, promissory estoppel, and *quantum meruit*.

*See generally* Complaint.  On November 14, 2013, this court consolidated the

*Blackhawk* and the *Champion/Redline* cases for pretrial purpose.  *See* Order (docket

entry 33, 3:13-CV-0893-G).

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Champion and Redline contend that this court lacks subject matter

jurisdiction.  Defendants' Brief in Support of Motion to Dismiss Plaintiff's Original

Complaint for Declaratory Judgment ("Champion/Redline Motion") at 6-10 (docket

entry 13, 3:13-CV-0893-G).  Specifically, Champion and Redline assert that Fannie

Mae has failed to show injury, that only the Federal Housing Finance Agency

("FHFA") as Fannie Mae's conservator has the authority to litigate claims belonging

to Fannie Mae, that Fannie Mae has failed to assert a relevant amount in controversy,

and that Fannie Mae's claim is not ripe.  *Id*. at 7-10.

Article III of the United States Constitution limits the jurisdiction of the

federal courts to "cases" and "controversies."  U.S. CONST. Art. III § 2.  Standing --

*i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of

the suit -- is an "essential and unchanging part" of this case-or-controversy

requirement.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The federal

courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.'") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction.  See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction.  See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981).  The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).  While the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements, that burden need be met only by a

preponderance of the evidence.  See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d

908, 910 (5th Cir. 2002).

The Declaratory Judgment Act allows federal courts the opportunity to

"declare the rights and other legal relations of any interested party seeking such

declaration . . . ."  28 U.S.C. § 2201(a).  The Fifth Circuit has long held that parties

with legal interests threatened in an actual controversy have standing to sue under the

Declaratory Judgment Act.  See, *e.g.*, *Vantage Trailers, Inc. v. Beall Corporation*, 567

F.3d 745, 748 (5th Cir. 2009); *Collin County, Texas v. Homeowners Association for Values*

*Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990).  A

declaratory judgment is often sought before a completed injury-in-fact has occurred,

*United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000), and

"declaratory actions contemplate an '*ex ante* determination of rights,'"  *Rhode Island v.*

*Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir.) (quoting *Step-Saver Data*

*Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990)), *cert. denied*, 513

U.S. 919 (1994).  However, the Declaratory Judgment Act does not extend the

subject matter jurisdiction of the court beyond the limits delineated in Article III of

the United States Constitution.  *Skelly Oil Company v. Phillips Petroleum Company*, 339

U.S. 667, 671 (1950); see also *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001)

(en banc) ("[T]he Declaratory Judgment Act does not itself grant federal

jurisdiction.").  Declaratory judgments "still must be limited to the resolution of an

- 11 -

'actual controversy.'" *United Transportation*, 205 F.3d at 857 (citing *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 239-40 (1937)); see also *Standard Fire Insurance Company v. Sassin*, 894 F. Supp. 1023, 1026 (N.D. Tex. 1995) (Sanders, J.) ("The Declaratory Judgment Act does not exempt federal district courts from the constitutional requirement that there be an actual controversy between the parties."). At the same time, "[i]t is well-established that the phrase 'actual controversy' in § 2201(a) includes any controversy over which there is Article III jurisdiction." *Caraco Pharmaceutical Laboratories, Limited v. Forest Laboratories, Inc.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008) (citing *Aetna Life Insurance Company*, 300 U.S. at 239-40)), *cert. denied*, 555 U.S. 1170 (2009); see also *Young v. Vannerson*, 612 F. Supp. 2d 829, 840 (S.D. Tex. 2009) ("[S]howing a controversy for the purpose of a declaratory judgment action requires no greater showing than is required under Article III." (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-27(2007)).

Fannie Mae asserts that an actual controversy exists, and that it has standing to sue Champion and Redline.  Plaintiff Fannie Mae's Amended Response in Opposition to Defendants Champion's and Redline's Motion to Dismiss ("Fannie Mae Response") at 15-20 (docket entry 35, 3:13-CV-0893-G).  On the other hand, Champion and Redline argue that there is no actual controversy in this case because Fannie Mae merely references a related case in its complaint without an allegation

that any activity of Champion or Redline would cause Fannie Mae harm.
Champion/Redline Motion at 7.

Although Fannie Mae has been sued by Blackhawk and not by the Champion
and Redline, facts have been alleged that indicate a causal connection.  For example,
Champion and Redline aver that they "are the only brokers that have ownership
interests held by Spinetto, who also has an ownership interest in Blackhawk."
Champion/Redline Motion at 4.  Champion and Redline also assert that Fannie
Mae's termination of their MLAs were "tortious."  *Id*.  Therefore, the injury can be
"fairly traceable" to the actions challenged in the *Blackhawk* case.

In addition, Fannie Mae has successfully proven that the FHFA approved and
authorized Fannie Mae to bring this suit by submitting an affidavit of the General
Counsel of the FHFA.  *See* Fannie Mae Response at 17; *see also* Appendix to Plaintiff
Fannie Mae's Amended Response in Opposition to Defendants Champion's and
Redline's Motion to Dismiss (docket entry 35-2) at 121-22.  In granting Fannie
Mae's motion to transfer the *Blackhawk* case to the Northern District of Texas, the
United States District Court for the District of Columbia Court also noted that it "is
satisfied that [the standing problem] will not bar suit in the Northern District of
Texas since [FHFA] is aware of the suit and has approved and authorized Fannie
Mae's filing and prosecution of the claims in that action."  *Blackhawk*, 975 F.Supp.2d
at 62, n.2.

- 13 -

Fannie Mae sufficiently pleads that it has been sued in the *Blackhawk* case, wherein Blackhawk seeks damages of at least $15 million for each of its claims. Fannie Mae Complaint ¶ 4, n.1.  Therefore, the amount in controversy in the *Champion/Redline* case is the value of Fannie Mae's right to be protected or the extent of the injury to be prevented, which is the value of the claims in the *Blackhawk* case. Because the court has concluded above that injury in fact is present in the *Champion/Redline* case based on the fact that Fannie Mae has been sued by Blackhawk on the issue of termination of the MLAs, the court agrees with Fannie Mae's allegation that the amount in controversy is determined as the value of Blackhawk's claim in the *Blackhawk* case, which exceeds $75,000.

The court concludes that an actual controversy exists, that Fannie Mae has standing to sue Champion and Redline, and that Fannie Mae has satisfied the amount in controversy requirement.

B. <u>The Court's Discretion to Dismiss<br>a Suit for Declaratory Judgment</u>

The Declaratory Judgment Act confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.  See *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("'[I]t is a matter for the district court's sound discretion whether to decide a declaratory judgment action.'").  The Act gives federal courts competence to declare rights, but it does not impose a duty to do so.  See *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam)

- 14 -

("[The] Act was an authorization, not a command.").  The core issue of this dispute --

whether Fannie Mae possessed a legal right to terminate its MLAs with REO brokers -

- will be resolved by the *Blackhawk* case, so Fannie Mae's separate claim for

declaratory relief is dismissed as redundant.  See *Landscape Design and Construction, Inc.*

*v. Transport Leasing/Contract, Inc.*, No. 3:00-CV-0906-D, 2002 WL 257573, at *10

(N.D. Tex. Feb. 19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action

that sought resolution of claims that were already basis of lawsuit).  Thus, the motion

of Champion and Redline to dismiss Fannie Mae's complaint is granted.

### C.  Rule 12(b)(6) Failure to State a Claim

In the *Blackhawk* case, Fannie Mae moves to dismiss the claims of Blackhawk

and Spinetto or in the alternative to require Blackhawk and Spinetto to file a more

definite statement of their claims (docket entry 37, 3:13-CV-4113-G).  FED. R. CIV.

P. 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon

which relief can be granted."  A motion under Rule 12(b)(6) should be granted only if

it appears beyond doubt that the plaintiffs could prove no set of facts in support of

their claims that would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994)

(citations omitted).  Before dismissal is granted, the court must accept all well-

pleaded facts as true and view them in the light most favorable to the non-movants.

*Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629

(5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994);

*Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th

Cir. 1991).  When a party moves for a more definite statement, the court must

determine whether the complaint is such that a party cannot reasonably be required

to frame a responsive pleading.  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130

(5th Cir. 1959).  Federal Rule of Civil Procedure Rule 12(e) cannot be used as a

substitute for discovery, and a motion under it should be denied if the information

that the defendant requests can be obtained through discovery.  *Id*. at 132.  Federal

Rule of Civil Procedure 8(a)(2) requires that a claimant give "a short and plain

statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2).  The thrust of the motion is that the plaintiffs have failed to state claims

upon which this court could grant them to relief.  The court concludes, however, that

the defendant has failed to show that the plaintiffs could prove no set of facts in

support of their claims that would entitle them to relief.  See *Conley*, 355 U.S. at 45-

46.  Accordingly, the motion is denied.[*]

---

[*]       Fannie Mae contends that some or all of Spinetto's claims for
defamation and business disparagement are time-barred.  Fannie Mae Motion to
Dismiss at 17-18.  Spinetto's claims in the first amended complaint relate back to the
original complaint.  *See* FED. R. CIV. P. 15(c)(1) ("An amendment to a pleading
relates back to the date of the original pleading when . . . (B) the amendment asserts
a claim or defense that arose out of the conduct, transaction, or occurrence set out --
or attempted to be set out -- in the original pleading.")  Thus, at this stage of the case,
the court refuses to dismiss these causes of action.

- 16 -

III.  <u>CONCLUSION</u>

For the reasons stated, Fannie Mae's motion (docket entry 37, 3:13-CV-4113-G) is **DENIED**, and motion of Champion and Redline to dismiss (docket entry 12, 3:13-CV-0893-G) is **GRANTED**.

**SO ORDERED**.

August 5, 2014.

_____
**A. JOE FISH**
**Senior United States District Judge**